# ATTACHMENT 16

FaegreBD.com

# FAEGRE BAKER DANIELS

USA ▾ UK ▾ CHINA

**Kerry L. Bundy**
Partner
kerry.bundy@FaegreBD.com
Direct +1 612 766 8217

Faegre Baker Daniels LLP
2200 Wells Fargo Center  90 South Seventh Street
Minneapolis  Minnesota 55402-3901
Phone +1 612 766 7000
Fax +1 612 766 1600

May 17, 2016

### VIA CERTIFIED MAIL, RETURN RECEIPT REQUESTED

BW-3 of Akron, Inc., William C. Bord, Shirley K. Bord,
Executrix of the Estate of William C. Bord, Frederick G. Bord,
Harry Bord, and Louise Hagstrom
BW-3 of Akron, Inc.
265 West Bowery Street
PO Box 529
Akron, Ohio 44309

### VIA UPS AND EMAIL
Craig S. Marshall, Esq.
Stark & Knoll Co., L.P.A.
3475 Ridgewood Road
Akron, Ohio 44333-3163
CMarshall@stark-knoll.com

Re:   Notice of Termination of Licensing Agreement

We write to inform you that BWW has the right – without delay – to immediately terminate the Licensing Agreement ("Licensing Agreement") entered into between BW-3 of Akron, Inc. ("BW-3 Akron") and Bill Bord, Frederick Bord, Harry L. Bord and Louise Hagstrom (collectively, "the Bords"), on the one hand, and Buffalo Wild Wings, Inc.'s ("BWW") predecessor JMS Associates, Inc., on the other, thus extinguishing all of BW-3 Akron and the Bords' rights thereunder.

Although BWW has the right to immediately effectuate termination of the Licensing Agreement, because as set forth below BW-3 Akron has failed to cure the defaults identified in BWW's April 1, 2016 Notice of Default and Opportunity to Cure, BWW will stay effectuating termination of the Agreement until BWW obtains a judicial confirmation of its rights under the Agreement. Thus, without waiving any of its rights under the Agreement or this Notice of Termination, BWW is holding the effectiveness of this instant termination letter in abeyance, pending the Court's confirmation of its rights.

Once the termination of the Licensing Agreement is effectuated, neither BW-3 Akron nor the Bords, individually or collectively, may continue to operate the restaurant at 456 East Exchange Street, Akron, Ohio (the "Akron Store") that is the subject of the Licensing Agreement as a BWW restaurant.

US.106426796.01

Case: 5:16-cv-01183-SL Doc #: 1-17 Filed: 05/17/16 3 of 16. PageID #: 132

BW-3 of Akron, Inc., et al.　　　　　　　　Page 2　　　　　　　　May 17, 2016
Craig S. Marshall, Esq.

Thus, BW-3 Akron and the Bords must at that time immediately cease (1) using BWW's trademarks and servicemarks; (2) offering BWW's distinctive products and services, and (3) employing BWW menus and procedures and formulae for preparing and serving BWW menu items at the Akron Store or otherwise.

## Factual Background

On April 1, 2016, BWW sent to you a Notice of Default and Opportunity to Cure ("2016 Notice") stating that BW-3 Akron and the Bords were in material default of various provisions of the Licensing Agreement.

As you are aware, under the Licensing Agreement, BWW granted BW-3 Akron a limited license to operate the Akron Store, using the trademarks and servicemarks associated with BWW restaurants and the distinctive products, services, signs, equipment, menus, procedures and formulae for preparing and serving the BWW menu items, among other things (collectively, the "BWW Marks and System"). (Agreement at ¶¶ 3-4 & § 1, attached hereto.)

Section 7 of the Licensing Agreement provides that the BWW Marks and System as well as the products associated with the Marks and System might be changed, "including the use of new, modified or different tradenames, trademarks, servicemarks or copyrighted materials, new products, new equipment or new techniques (collectively, the 'Enhancements')." (Agreement § 7.)

BWW has had multiple discussions and written communications with you and your legal counsel over the past two and a half years regarding BW-3 Akron's need to upgrade its facilities and operations in compliance with the express requirements of the Licensing Agreement, including without limitation Sections 8(E) and 8(F), to reflect the BWW brand and to meet BWW's customer expectations. Section 8(E) of the Agreement provides that a default shall occur if "BW-3 Akron should misuse the Marks, or System or Enhancements provided by [BWW] or otherwise materially impair the goodwill associated therewith...." Section 8(F) provides that a default shall occur if "BW-3 Akron should materially fail to operate its store using the system developed by [BWW] or should fail in any other material way to maintain [BWW's] standard of quality and appearance in the operation of a [BWW restaurant]."

As early as December 2013, BWW provided BW-3 Akron with the store design plans that BWW was requiring for all new stores and remodels effective January 1, 2014 – the "Stadia" design specifications. BW-3 Akron has not updated its store and operating standards for more than a decade. During that time, BWW has progressively made substantial Enhancements to the BWW Marks and System. BW-3 Akron is thus now several generations behind even the pre-"Stadia" look.

As you are also aware, over a year ago, on April 30, 2015, BWW first issued a Notice of Default and Opportunity to Cure to you, stating that BW-3 Akron was in material default of various provisions of the parties' Licensing Agreement, including Sections 8(E) and 8(F) referenced above, based on BW-3 Akron's failure to be in compliance with the "Stadia" design standards and other BWW operations. In a good faith effort to avoid litigation and explore a mutually acceptable path forward, BWW agreed to rescind its April 30, 2015 Notice of Default. In exchange, BW-3 Akron agreed to consider certain

BW-3 of Akron, Inc., et al.            Page 3            May 17, 2016
Craig S. Marshall, Esq.

remodeling and upgrade options for the Akron store, short of implementing the entire "Stadia" design and/or purchasing adjacent real property. BW-3 Akron also agreed to have a representative available to conduct a "scope walk" of the Akron store with BWW to identify which elements of the "Stadia" design would be applied to the Akron store and which programs and procedures of the BWW System would be adopted.

    The "scope walk" was conducted, with counsel for all parties present. On March 8, 2016, BWW delivered to BW-3 Akron and the Bords its findings (the "Scope Walk Report"), which identified certain elements of the "Stadia" design that BWW required BW-3 Akron to implement so that the Akron store would appropriately reflect the BWW brand and deliver the BWW experience to customers. On March 9, 2016, BW-3 Akron rejected the Scope Walk Report out of hand, stating that "BW-3 Akron rejects your demand that it must retain an architect within 30 days to design, manage and implement your directive that it remodel its store to the Stadia design. BW-3 Akron has no plans to remodel its store at this time."

    Thereafter, on April 1, 2016, BWW sent you a Notice of Default and Opportunity to Cure ("2016 Notice"), informing BW-3 Akron and the Bords that BW-3 Akron was in default under the Agreement pursuant to Section –

- 8(B) because BW-3 Akron is insolvent (Agreement § 8(B));

- 8(F) because BW-3 Akron has materially failed to operate the Akron Store using the System as it has been developed by BWW and failed to maintain BWW's standard of quality and appearance in the operation of its store (Agreement§ 8(F)); and

- 8(E) because, by failing to use the current Marks and System and to implement the Enhancements, BW-3 Akron is misusing the Marks and System and otherwise materially impairing the goodwill associated therewith (Agreement § 8(E)).

    The 2016 Notice also informed BW-3 Akron that, under Section 8 of the Licensing Agreement "[i]f BW-3 Akron shall be in default under the terms of [the] Agreement, and such default shall not be cured within thirty (30) days after receipt of written 'notice to cure' from [BWW], [BWW] may immediatley [sic] terminate [the] Agreement." (Agreement § 8.)

    The 2016 Notice provided that, in order to cure the default, BW-3 Akron must within 30 days of receiving the notice –

- Provide written evidence to BWW that BW-3 Akron has engaged an architect to design, manage and implement the upgrades and renovations identified in the Scope Walk Report (attached thereto);

- Confer with BWW and agree upon a date by which BW-3 Akron will submit to BWW architectural plans for the upgrades and renovations identified in the Scope Walk Report for BWW's approval; and

- Provide audited financial statements of BW-3 Akron for the 12-month period ended December 31, 2015, demonstrating that BW-3 Akron is not insolvent. BWW also reserved the

| | | |
|---|---|---|
| BW-3 of Akron, Inc., et al. | Page 4 | May 17, 2016 |
| Craig S. Marshall, Esq. | | |

right to determine whether BW-3 Akron had met this condition, upon review of the financial statements.

In addition, the 2016 Notice stated that BW-3 Akron must, within 30 days, provide written assurance to BWW that it will adopt and implement current and future Enhancements to the BWW System that are operational and procedural in nature, such as BWW's new POS system, guest loyalty program, and Guest-facing technology (including Buzztime tablets, B-Dubs TV and Beer TV).

The 2016 Notice made clear that BWW would be within its contractual rights to terminate the Licensing Agreement, if BW-3 Akron did not cure within 30 days. The Certified Mail Delivery receipt for the 2016 Notice indicates that BW-3 Akron signed for the Notice on April 14, 2016. BWW has, therefore, used April 14, 2016 as the first day of the 30-day cure period. As such, the cure period expired on May 15, 2016. Because BW-3 Akron did not perform, much less meet, any of the cure requirements set forth above and in the 2016 Notice, BWW has the right to immediately terminate the Agreement.

## **Immediate Termination Held in Abeyance**

Concurrent with the transmittal of this letter to BW-3 Akron, the Bords and their counsel, BWW is seeking, among other things, a judicial confirmation of its rights under the Licensing Agreement to effect this termination. As noted above, BWW will stay effectuating termination of the Agreement until BWW obtains this confirmation. Please note, however, that Section 9 of the Licensing Agreement provides that upon termination BW-3 Akron "shall discontinue use of the Marks and the System and shall deliver to [BWW] all promotional materials associated with the Marks and the System, including signs, literature, paper products, menus, advertising matter or stationery containing or bearing any reference to the Marks...."

In accordance with Section 9, upon effectuation of the termination, you will be obligated to immediately:

- Remove from the exterior and interior of the Akron store all BWW trademarks, signs, insignia, proprietary products and ingredients, and any other Buffalo Wild Wings branded materials and return them to BWW;

- Cease offering BWW's distinctive products and services and cease using BWW menus and procedures and formulae for preparing and serving BWW menu items at the Akron store;

- Cease representing to BWW-approved or certified suppliers that the Akron store is operating as a BWW restaurant; and

BW-3 of Akron, Inc., et al. Page 5 May 17, 2016
Craig S. Marshall, Esq.

- Refrain from operating a business with a name that is deceptively similar to any of the trademarks, trade names and service marks of BWW at the Akron store location.

Sincerely,

*Kerry L. Bundy*

Kerry L. Bundy

Enclosure

## LICENSING AGREEMENT

This Agreement is made this ____ day of _____, 1990, by and among JMS Associates, Inc., an Ohio corporation ("JMS"), and BW-3 of Akron, Inc., an Ohio corporation, ("BW-3 Akron"), and Mike Balsom, Arthur L. Bowman, III, James W. Disbrow, Scott A. Lowery, Mark Lutz, Eugenie H. Redman, John A. Rapasy, and Jan Spencer (the "JMS Shareholders"), and William C. Bord, Frederick G. Bord, Harry L. Bord and Louise E. Hagstrom (the "Bords").

W I T N E S S E T H :

WHEREAS, as a result of the expenditure of time, effort and money, JMS has acquired certain experience, skills, techniques and knowledge with respect to the development, opening and operating of Buffalo Wild Wings and Weck restaurants ("BW-3 Stores"); and

WHEREAS, the BW-3 Stores offer distinctive features in products, services, signs, equipment and menu layouts, procedures and formulae for preparing and serving the menu items, specifications for food products, methods of inventory, operational and financial control, and training programs, all of which JMS considers proprietary (the "System"); and

WHEREAS, JMS holds title and interest together with the goodwill connected therewith in and to the trademarks and servicemarks "Buffalo Wild Wings and Weck" and "BW-3" and other proprietary marks, names and copyrights (collectively, the "Marks"); and

WHEREAS, the JMS Shareholders and the Bords have agreed to enter into a Close Corporation Agreement to operate a BW-3 Store in Akron, Ohio, and have formed BW-3 Akron for this purpose; and

WHEREAS, the Bords are the owners of the premises located at 456 East Exchange Street, Akron, Ohio (the "Premises"), and have agreed to lease the Premises to BW-3 Akron; and

WHEREAS, as a condition of the Bords making an initial capital contribution to BW-3 Akron in the amount of Twenty-Five Thousand Dollars ($25,000.00) and leasing the Premises to BW-3 Akron, the Bords have required that the JMS Shareholders cause JMS to license the Marks and the System to BW-3 Akron in accordance with the terms of this Agreement;

NOW THEREFORE, in consideration of the foregoing, the mutual agreements, covenants and promises contained herein, and the receipt by JMS of Ten Dollars ($10.00) from BW-3 Akron, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto agree as follows:

1. JMS hereby grants to BW-3 Akron the non-exclusive right to use the Marks and the System as they presently exist or as they may be acquired, developed or utilized by JMS in the future in connection with JMS' operation of BW-3 Stores. The license granted hereunder shall be for BW-3 Akron's use only at the Premises and no other location.

2. For so long as this Agreement is in effect, neither JMS nor the JMS Shareholders shall directly or indirectly, without the prior written consent of the Bords, operate for its or their own

2

account or grant to any third party the right to operate a BW-3 Store in Summit County, Ohio, other than the BW-3 Store located at the Premises (hereinafter the "BW-3 Akron Store").

3. The term of this Agreement and the license granted hereunder shall commence on the date hereof and unless otherwise terminated as permitted hereunder shall continue for a period of ten (10) years from date of execution of this Agreement. This Agreement and the license granted hereunder shall be deemed automatically renewed for unlimited successive ten (10) year terms unless BW-3 Akron gives notification to JMS of its intent not to renew at least sixty (60) days prior to the expiration of the initial term or any renewal term. The Agreement shall be renewed upon the same terms and conditions as contained herein, unless otherwise agreed by the parties in writing.

4. JMS represents and warrants that it has good and marketable title to the Marks and the System and JMS' use of any intangible licensed hereunder has not, and there is no reason to believe that it will, infringe the rights of any person. JMS agrees to defend, indemnify and hold harmless BW-3 Akron, together with its directors, officers, shareholders, employees, successors and assigns, with respect to all patent, trademark and copyright infringement liability or expenses arising out of the use of the Marks and System. BW-3 Akron acknowledges the representations of JMS that JMS owns the exclusive right, title and interest in and to the Marks and System, and BW-3 Akron will not at any time knowingly do or cause to be done any act or thing in any way impairing or

3

intending to impair JMS' right, title and interest to the Marks and System. BW-3 Akron agrees it will not represent that it has any ownership interest in the Marks or System and acknowledges that use of the Marks and System shall not create in BW-3 Akron's favor any right, title and interest in or to the Marks and System, except as provided in this Agreement.

5. JMS will assist BW-3 Akron in establishing and standardizing procedures and techniques essential to the operation of the BW-3 Akron Store for a minimum period of two (2) years from the date of execution of this Agreement and will assist in hiring and training BW-3 Akron's personnel during such period.

6. During the term of this Agreement, and any renewal thereof, JMS shall provide, on an ongoing basis, advisory service, which shall include, without limitation, consultation on and recommendations relative to promotional, business, marketing, financial, or operational problems concerning the BW-3 Akron Store.

7. JMS may from time to time change, add to, or modify the Marks, the System, or the products presently identified with the Marks and the System, including the use of new, modified or different tradenames, trademarks, servicemarks or copyrighted materials, new products, new equipment or new techniques (collectively the "Enhancements"). JMS hereby acknowledges that the license granted hereunder shall include and apply to any and all Enhancements as if the Enhancements were a part of this Agreement at the time of execution hereof.

4

8. A default under this Agreement shall occur upon the happening of any of the following events:

(A) BW-3 Akron is dissolved;

(B) BW-3 Akron becomes insolvent or makes an assignment for the benefit of creditors;

(C) If a petition in bankruptcy, either voluntary or involuntary, is filed by BW-3 Akron or if BW-3 Akron is adjudicated bankrupt;

(D) If a bill in equity or other proceeding for the appointment of a receiver for BW-3 Akron or other custodian for BW-3 Akron's business or assets is filed, or a receiver or other custodian is appointed for BW-3 Akron;

(E) If BW-3 Akron should misuse the Marks, or System or Enhancements provided by JMS or otherwise materially impair the goodwill associated therewith or JMS rights therein or BW-3 Akron should use any names, marks, systems or symbols which might cause confusion with those owned by JMS.

(F) If BW-3 Akron should materially fail to operate its stores using the system developed by JMS or should fail in any other material way to maintain JMS standard of quality and appearance in the operation of a BW-3 store.

(G) If BW-3 Akron should cease operations at the premises without the written consent of JMS for any reason unless as a result of fire, theft, condemnation or act of God, or otherwise as a result of circumstances beyond BW-3 Akron's control.

(H) If BW-3 Akron should attempt to affect any assignment other than in accordance with Paragraph 12 hereof.

If BW-3 Akron shall be in default under the terms of this Agreement, and such default shall not be cured within thirty (30) days after receipt of written "notice to cure" from JMS, JMS may immediatley terminate this Agreement.

5

9. Upon termination of this Agreement, BW-3 Akron shall discontinue use of the Marks and the System and shall deliver to JMS all promotional materials associated with the Marks and the System, including signs, literature, paper products, menus, advertising matter or stationery containing or bearing any reference to the Marks (the "Promotional Materials"); provided, however, that JMS shall reimburse BW-3 Akron for its out-of-pocket expenses for usable Promotional Materials, which are delivered to JMS.

10. Nothing in this Agreement shall be deemed to limit the right of BW-3 Akron or the Bords to continue to operate a restaurant or other business at the Premises upon termination of this Agreement; provided, however, that BW-3 Akron and the Bords agree not to adopt or use, without JMS' prior written consent, any names, marks, systems or symbols which would infringe JMS' interest in and to the Marks, System and Enhancements.

11. JMS and the JMS Shareholders hereby grant to BW-3 Akron a right of first refusal in connection with the opening of any BW-3 Store by JMS or any of the JMS Shareholders or a third party in the following counties: Summit, Medina, Stark, Portage and Mahoning. Neither JMS nor the JMS Shareholders may open any BW-3 Store nor may any license be granted concerning the System, the Marks or any Enhancements in the designated counties without the prior written approval of BW-3 Akron without offering the Bords the opportunity to participate as a 50 percent owner in any BW-3 Store upon terms

6

not less favorable than those granted to the Bords with respect to BW-3 Akron.

12. No party may assign its respective rights or delegate its respective duties under this Agreement without the express written consent of the other parties, which consent will not be unreasonably withheld; however, this shall not limit the right of JMS to assign its rights and delegate its duties under this Agreement to BW-3 Franchising Systems, Inc., a corporation formed for the purpose of franchising BW-3 stores.

13. No failure of any party to exercise any power reserved to it hereunder or to insist upon strict compliance with any obligation or condition hereunder and no custom or practice of the parties in variance with the terms hereof, shall constitute a waiver of the right to demand exact compliance with the terms hereof. Any waiver will not affect or impair the other parties' rights in respect to any subsequent default of the same or a different nature.

14. Any notices required to be given hereunder shall be in writing and shall be deemed given when deposited in the mail by certified or registered mail, postage prepaid, addressed as follows:

IF TO BW-3 AKRON OR THE BORDS:   BW-3 OF AKRON, INC.
William C. Bord
265 West Bowery Street
P.O. Box 529
Akron, Ohio 44309

also

7

                                  James Disbrow
                                  c/o JMS ASSOCIATES, INC.
                                  2634 Vine Street
                                  Cincinnati, Ohio 45219

IF TO JMS OR TO JMS SHAREHOLDERS:  JMS ASSOCIATES, INC.
                                  James Disbrow
                                  2634 Vine Street
                                  Cincinnati, Ohio 45219

15. This Agreement and the Close Corporation Agreement constitute the entire, full and complete Agreement between the parties concerning the subject hereof, and supersede all prior agreements. No amendment, change or variance from this Agreement shall be binding on either party unless executed in writing.

16. Every part and/or provision of this Agreement shall be considered severable and if for any reason any part is deemed invalid and contrary to any existing or future law or regulation, such invalidity shall not impair the operation of or affect the remaining portions of the Agreement.

17. This Agreement shall be interpreted and construed under the laws of Ohio. It is mutually understood and agreed that this Agreement shall be deemed to have been made in Summit County, Ohio, and the parties consent that the state or federal courts in and for Summit County, Ohio, shall be the forum in which any cause of action arising under this Agreement may be instituted.

18. Words of gender shall be deemed to include all genders.

IN WITNESS WHEREOF, the parties duly executed this Agreement as of the day and year above first written.

JMS ASSOCIATES, INC.

By: _____

Its _President_

"JMS"

BW-3 OF AKRON, INC.

By: _____

Its _President_

"BW-3 AKRON"

_____
MIKE BALSOM

_____
ARTHUR L. BOWMAN, III

_____
JAMES W. DISBROW

_____
SCOTT A. LOWERY

_____
MARK LUTZ

_____
EUGENIE H. REDMAN

_____
JOHN A. RAPASY

9

_____
JAN SPENCER

"JMS SHAREHOLDERS"

_____
WILLIAM C. BORD

_____
FREDERICK G. BORD

_____
HARRY L. BORD

_____
LOUISE E. HAGSTROM

"BORDS"

AGC00180.W51

10