UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **BUFFALO WILD WINGS, INC.** | ) | CASE NO. 5:16-cv-01183 |
| | ) | |
| Plaintiff, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | |
| | ) | |
| **BW-3 OF AKRON, INC.,** | ) | **BW-3 OF AKRON, INC.'S FRCP** |
| | ) | **56(c)(2) OBJECTION TO CERTAIN** |
| Defendant-Counterclaimant, | ) | **OF BWW'S SUPPORTIVE** |
| | ) | **MATERIALS** |
| and | ) | |
| | ) | |
| **SHIRLEY K. BORD, et al.** | ) | |
| | ) | |
| Counterclaimants. | ) | |

BW-3 of Akron, Inc. ("BW-3 Akron") hereby objects to certain materials utilized by Buffalo Wild Wings, Inc. ("BWW") in its Opposition to BW-3 Akron's Motion for Summary Judgment [Doc. 95] and requests that the Court disregard that material in connection with its consideration of the pending motions for summary judgment.

Although much of the material cited by BWW in its Opposition is appropriate for showing the positions it has taken in recent years, much of that same material is inappropriate and inadmissible for the factual propositions it is used to support in BWW's Opposition. These inadmissible materials include (1) the letters drafted by BWW's own in-house and outside counsel; (2) a purported report of BWW's former construction manager cited by its counsel; (3) an unverified Disclosure of Expert Testimony of BWW's former General Counsel and Chief Operating Officer; and (4) a number of unauthenticated, and largely anonymous internet comments—some of which were responsive to BW-3 Akron's discovery requests, but not provided during discovery. Many of the propositions set forth

as facts in the Background of BWW's Opposition come from these materials, and much of the purported factual material amounts to little more than the previously written opinions of its in-house counsel and outside attorneys.

Rule 56(c)(1) of the Federal Rules of Civil Procedure sets forth the types of evidence that a party can use in opposition to a motion for summary judgment. A party attempting to demonstrate that a genuine issue of material fact remains must cite to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."[1]

BWW attempts to create genuine issues of material fact by citing to several items that are neither record materials contemplated by FRCP 56(c)(1) nor items that would ever be capable of becoming evidence. As a result, they should not be considered by the Court in connection with its evaluation of the material factual issues in this case. At most, the Court should consider them as additional argument. This should especially be the case with respect BWW's citations to the letters of its own counsel.

1. **The factual propositions and opinions set forth in the letters of BWW's in-house and outside counsel are not appropriate foundational materials.**

In a number of places in its Opposition, BWW cites to letters containing opinions and hearsay from its own counsel to support various factual assertions and various assertions requiring determinations of both fact and law. In support of its factual assertions:

- that BW-3 Akron "bore little resemblance to other BWW restaurants;"[2]

---

[1] FRCP 56(c)(1)(A).

[2] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 9] citing Ex. 30 [Doc. 76-5].

2

- that BWW provided a report "summarizing a scope walk that BWW had conducted;"[3]

- that "[t]he report identified changes that needed to be implemented to bring the Akron Restaurant into compliance with BWW standards;"[4]

- that "[t]he Stadia design plans represent … BWW's standard of quality and appearance;"[5] and,

- a number of other factual propositions,

BWW cites the letters of its former in-house counsel, Sarah Yatchak, and the letters of its counsel in this case, Kerry Bundy.[6] These include the September 18, 2014 letter of Attorney Yatchak,[7] the November 21, 2014 letter of Attorney Yatchak,[8] the April 30, 2015 letter of Attorney Bundy,[9] the July 27, 2015 letter of Attorney Bundy,[10] the March 8, 2016 letter of Attorney Yatchak,[11] the April 1, 2016 letter of Attorney Bundy,[12] and May 17, 2016 letter of Attorney Bundy[13] *all drafted in the midst of litigation*. While these materials certainly set forth BWW's positions on the facts and the law, BWW's citation to them to create genuine issues of material fact amounts to little more than citation to inadmissible hearsay and opinions insufficient under FRCP 56(c). That rule requires that facts be established through

---

[3] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 11] citing Ex. 30 [Doc. 76-5].

[4] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 12] citing Ex. 30 [Doc. 76-5].

[5] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 10] citing Ex. 24 [Doc 75-4].

[6] *See e.g.,* Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 9-12, 17, 22-23].

[7] Ex. 24 [Doc. 75-4] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 10].

[8] Ex. 26 [Doc. 76-1] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 10].

[9] Ex. 27 [Doc. 76-2] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 10-11, 17, 23].

[10] Ex. 29 [Doc. 76-4] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 11, 22].

[11] Ex. 30 [Doc.76-5] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 9, 11-12].

[12] Ex. 32 [Doc. 77-2] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 12].

[13] Ex. 33 [Doc. 77-3] cited in Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 12].

"record"[14] materials and "competent"[15] declarants testifying "based on personal knowledge."[16] In short, it requires facts that would "be admissible in evidence."[17] The letters of BWW's counsel don't even come close to meeting that requirement. And BWW points to nothing indicating that the cited information could ever be made admissible evidence.

**2. The factual propositions and opinions set forth in the alleged report of Stephen Merz are similarly inappropriate as foundational materials.**

One of the items cited in the letters of BWW's counsel, which is also cited extensively by BWW in its Opposition, is a purported report of its construction manager Stephen Merz.[18] The report allegedly shows "the changes that needed to be implemented to bring the Akron Restaurant into compliance with BWW's standards."[19] But the report is without foundation. It has already been shown to be someone else's work product, and discovery has failed to reveal its actual author.

The depositions in the case clearly established that the report did not come from Merz. Indeed, he hadn't seen the report before his deposition in this case.

```
19     Q. I've handed you what's been marked for purposes
20  of this deposition as Exhibit 54.
21        Do you recognize that?
22     A. (Viewing exhibit.)
23     Q. Have you ever seen it before?
24     A. I don't believe I have.[20]
```

In fact no one has testified to creating the report. As it currently stands, the report appears to

---

[14] FRCP 56(c)(1)(A).

[15] FRCP 56(c)(4).

[16] FRCP 56(c)(4).

[17] FRCP 56(c)(4).

[18] *See* Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 12] citing Ex. 30 [Doc. 76-5].

[19] *Id.*

[20] Merz. Dep., May 31, 2017 [Doc. 87] at 55:19 - 55:24; *see also* 74:4-14.

4

be little more than the impractical requirements of BWW's counsel palmed off as the alleged findings of its former construction manager. It hardly amounts to admissible evidence or a verified report that might meet the requirements of FRCP 56(c)(4).

### 3. The use of the Disclosure of Expert Testimony of James Schmidt is equally as flawed.

The Disclosure of Expert Testimony [Doc. 71-3] that BWW extensively cites for a number of facts on pages 2 and 3 of its Opposition is similarly deficient under FRCP 56(c). That unverified filing allegedly sets forth the facts and opinions that will be forthcoming from its former General Counsel and COO, James Schmidt. But the facts and opinions have never been provided. And it is questionable as to whether they can be, especially by Schmidt.

Schmidt's deposition revealed the Disclosure itself to be little more than the work product of other counsel. When asked about his involvement with the Disclosure, Schmidt acknowledged that he had nearly no involvement with it. He certainly didn't draft or prepare it.

```
19  Q. The summary of your expert opinions, did
20     you -- did you have a hand in drafting that?
21  A. No, I did not.
22  Q. So, you didn't actually get on the computer
23     or draft any aspect of that; you don't sign
24     that, correct?
25  A. No, I -- yes, I did not prepare it.[21]
```

Moreover, he didn't discuss it with the person who apparently drafted and prepared it (in-house litigation counsel) before it was prepared.

```
7  Q. So, you told in-house counsel, these are my
8     opinions, he prepared something, correct?
9  A. I think he initially prepared it and then
```

---

[21] Schmidt. Dep., July 18, 2017 [Doc. 88] 273:19 – 25.

5

```
10    had me review it.
11  Q. When was that?
12  A. I don't recall.
13  Q. Did you actually have a discussion about it?
14  A. Yes.
15  Q. And how long was the discussion?
16  A. It was not lengthy.  I don't know exactly
17     how long it lasted.
18  Q. Less than an hour?
19  A. Yes.
20  Q. Less than half an hour?
21  A. Probably.[22]
```

Indeed, he didn't discuss his opinions with in-house counsel or anyone until after he received the Disclosure.

```
19  Q. When is the first time you expressed your
20     opinions in this case to anyone?
21  A. Regarding that expert opinion?
22  Q. Yes.
23  A. I expressed -- that was when I reviewed it
24     with Brad.
25  Q. Less than a half an hour, and the opinion
              278
 1.    was already drafted, correct?
 2.  A. Yes.[23]
```

And after his very brief discussion, no changes were made to the Disclosure of his "expert opinions" as a result of any of his discussions.

```
20  Q. When was the first time you read this
21     document?
22  A. Before it was filed.
23  Q. Did you make any changes to it before it was
24     filed?
25  A. No, sir.[24]
```

It is not surprising that no affidavit or declaration was ever provided by BWW actually disclosing Schmidt's testimony and opinions or verifying the Disclosure. Throughout the deposition, his qualifications to make many of the statements in the

---

[22] Schmidt. Dep. [Doc. 88] at 275:7 – 21.

[23] Schmidt Dep. [Doc. 88] at 277:19 – 278-2.

[24] Schmidt Dep. [Doc. 88] at 282:20 – 25.

6

Disclosure were shown to be highly questionable.[25] What is surprising is that the Disclosure would continue to be used as some sort of evidence, when it was admitted to be little more than the work product of BWW's in-house litigation counsel.

Had in-house litigation counsel been disclosed as an expert, and had he incorporated his opinions and understandings of the facts and opinion into an affidavit or declaration, the facts and opinions set forth in the Disclosure might be appropriate for some consideration. As it stands, they amount to little more than additional argument and inadmissible evidence.

**4. The unauthenticated internet comments that BWW cites are even more flawed for purposes of supporting its Opposition.**

Although in-house counsel could be identified as the source of the Schmidt Disclosure, the same cannot be said for the "internet comments" BWW cites. Their actual sources are seemingly unknown or, at the very least, seemingly unverified. But that didn't stop BWW from using them in its Opposition.[26]

In its effort to suggest BW-3 Akron's restaurant was "old and run down,"[27] that customers had a "terrible" experience at the restaurant,[28] and that it was in "GREAT need of an intervention"[29] BWW cites and quotes snippets from a number of internet comments. But the customer comments are unauthenticated and, on their face, suspect. Moreover, the only one even touching on the relevant, design issue—the one without any bates number[30]—

---

[25] *See e.g.*, Schmidt Dep. [Doc. 88] at 268:1 – 272:24.

[26] *See* Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 9-10].

[27] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 4] citing Ex. 54, undated online customer reviews [Doc. 95-13].

[28] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 10] citing Ex. 55, Jan. 20, 2015 customer complaint e-mail [Doc. 95-14].

[29] Pls.' Opp. to Def.'s Mot. Summ. J. [Doc. 95 at 10] citing Ex. 56, May 19, 2015 customer complaint e-mail [Doc. 95-15].

[30] Ex. 54 [Doc. 95-13].

was curiously never provided in discovery.[31]

BWW seems to ignore the evidentiary issues behind its cited internet materials. Content with out-of-context quotations,[32] it fails to provide any affidavits or declarations that might show these quotes could ever be made admissible. But the evidentiary issues should not be ignored. These internet comments are clearly hearsay, and BWW has provided nothing demonstrating that they are hearsay that will ever become admissible as business records or otherwise, or that they should be considered under FRCP 56(c). And as these suspect materials are the only evidence provided by BWW to even suggest any actual customer dissatisfaction or confusion with the BW-3 Akron restaurant, it has failed to provide any factual evidence in support of those material issues.

**CONCLUSION**

The background section of BWW's Opposition is more a recitation of its arguments than a statement of facts. The "facts" recited in its Argument section are similar.[33] In most instances that is obvious. However, by citing sources with little more than numbers, that distinction is sometimes obscured. Insofar as BWW's citations are to numbers representing its own counsel's correspondence [Docs. 75-4; 76-1; 76-2; 76-4; 76-5; 77-2; and 77-3], the unauthenticated report of Stephen Merz [Doc. 76-5], the unverified Disclosure of Expert Testimony [Doc. 71-3], and unauthenticated, largely anonymous, and suspect internet comments [Docs 95-13; 95-14; and 95-15], BW-3

---

[31] Declaration of Gordon D. Woolbert, II [Doc. 105] at ¶ 6 .

[32] Interestingly, the comment touching on design and stating that the Akron Restaurant was not "the typical suburban BW" went on to praise it with verbiage BWW conveniently failed to quote. "This is a smaller bar setting near a college campus. However, it was clean, cozy, had great food, friendly service, and all was done in a timely manner. Really nice place. I would go back." [Doc. 95-13 at 4].

[33] *See* Pls.' Opp. to Def.'s Mot. Summ. J. at the Argument [Doc. 95 at 13-25].

8

Akron objects to them and moves that they be disregarded for summary judgment purposes.

                Respectfully submitted,

                */s/ Gordon D. Woolbert, II*
                Gordon D. Woolbert, II (0068581)
                Merle D. Evans, III (0019230)
                DAY KETTERER LTD.
                Millennium Centre-Suite 300
                200 Market Avenue North
                P.O. Box 24213
                Canton, Ohio  44701-4213
                Telephone (330) 455-0173
                Facsimile (330) 455-2633
                gdwoolbert@dayketterer.com
                mdevans@dayketterer.com

                *Counsel for Defendant,*
                *BW-3 of Akron, Inc.*

## **PROOF OF SERVICE**

The undersigned hereby certifies that on this 4th day of October, 2017, a copy of the foregoing was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the Court's system.

*/s/ Gordon D. Woolbert, II*
Gordon D. Woolbert, II (0068581)

*One of the Attorneys for Defendant,
BW-3 of Akron, Inc.*
