**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Buffalo Wild Wings, Inc., | ) | CASE NO. 5:16-CV-01183 |
| | ) | |
| Plaintiff and Counter-Defendant, | ) | **JUDGE SARA LIOI** |
| | ) | |
| vs. | ) | |
| | ) | **BUFFALO WILD WING'S** |
| BW-3 of Akron, Inc., | ) | **MEMORANDUM IN OPPOSITION TO** |
| | ) | **BW-3 OF AKRON, INC.'S FRCP** |
| Defendant-Counterclaimant, | ) | **56(c)(2) OBJECTION TO CERTAIN** |
| | ) | **OF  BUFFALO WILD WINGS, INC.'S** |
| and | ) | **SUPPORTIVE MATERIALS** |
| | ) | |
| Shirley K. Bord, Frederick Bord, Harry L. Bord, and Louise E. Hagstrom, | ) | |
| | ) | |
| Counterclaimants. | ) | |

Briefing on the parties' cross motions for summary judgment closed on August 21, 2017. (Dkt. 29 at 2.) The final pretrial conference is set for November 14, 2017 and trial is scheduled to begin as soon as December 4, 2017. (*Id.* at 3.) Yet on **October 4, 2017**, BW-3 of Akron, Inc. ("BW-3") purported to reopen summary judgment by filing an Objection to some of the materials Buffalo Wild Wings, Inc. ("BWW") referenced in its Opposition to BW-3's Motion for Summary Judgment (Dkt. 58) that was filed two months earlier on **August 9, 2017**. (*See* Dkt. 106.) This eleventh-hour attempt to bolster BW-3's Motion for Summary Judgment and jeopardize the trial schedule should be rejected. First, BW-3's Objection is untimely and should be stricken without further consideration. *See Cleveland Clinic Health Sys.-E. Region v. Innovative Placements, Inc.*, 2012 WL 1945609, at *1 (N.D. Ohio May 30, 2012). Second, the majority of BW-3's Objection should be denied as moot because BWW does not rely exclusively (or at all, in some instances) on the disputed materials to establish the existence of a genuine issue of material fact. *See Oak Acres Nursery, LLC v. Stinchcomb Nursery Sales, Inc.*, 2013 WL 391175, at *2 (N.D. Ohio Jan. 30, 2013) ("[F]or the Court to act on [a Rule 56(c)(2)] objection, the defendants must have cited that evidence in support or dispute of a fact they are proposing."). Finally, if the Court indulges BW-3's untimely Objection, it should overrule the Objection in its entirety because it lacks merit. The four categories of evidence are properly before the Court on summary judgment because their contents could be presented in admissible form at trial. *See* Fed. R. Civ. P. 56(c)(2); *Bailey v. Floyd Cnty. Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997).

## ARGUMENT

**I.     The Court Should Deny BW-3's Objection As Untimely.**

BW-3's Objection should be denied as untimely because BW-3 failed to raise these evidentiary arguments in its Reply in Support of Motion for Summary Judgment (Dkt. 101) ("Reply"), and summary judgment briefing is closed.

On summary judgment, a party may "object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). An objection under Rule 56(c)(2) "functions much as an objection at trial, adjusted for the pretrial setting." *Id.* at advisory committee's note to 2010 amendment. The time to make an objection under Rule 56(c)(2) is when responding to the memorandum containing the challenged evidence. *See Sanders v. Armstrong*, 2011 WL 589910, at *1 (E.D. Ky. Feb. 10, 2011) ("[A]ny notice of objection to supporting evidence should be included in response to the Motion for Summary Judgment when submitted."); *see also Oak Acres Nursery*, 2013 WL 391175 at *1 (considering objections "filed . . . coincidentally with summary judgment filings"). Once summary judgment briefing closes, an objection under Rule 56(c)(2) is untimely. *See Cleveland Clinic*, 2012 WL 1945609, at *1 (denying as untimely motions to strike evidence submitted on summary judgment because the motions were filed 14 days after the dispositive reply deadline and 52 days after the at-issue evidence was filed); *see also Sanders*, 2011 WL 589910 at *1 (declining to consider "untimely" objections noting plaintiff who ignored evidentiary issues in his response to defendant's motion for summary judgment "may well have waived his opportunity to object").

The evidence BW-3 seeks to challenge is cited in BWW's Opposition, which was filed on August 7, 2017. (*See* Dkt. 95.) If BW-3 had objections to that evidence, the proper time to

make such objections was in its Reply, which was filed on August 21, 2017. (Dkt. 101); *see Sanders*, 2011 WL 589910, at *1. BW-3 did not take that opportunity. Its Reply brief does not challenge the admissibility of any evidence cited in BWW's Opposition. And BW-3 has made no attempt to claim it was unaware of the issues raised in its untimely Objection. In fact, BW-3 identified these issues in the parties' joint status report dated August 24, 2017. (Dkt. 102) In that report, BW-3 apprised the Court that it "anticipate[d] filing a motion objecting to certain materials BWW has presented in connection with the summary judgment motions." (*Id.*) BW-3 then waited an additional 42 days, until October 4, 2017, to file its Objection. BW-3 should not be allowed to re-open summary judgment at this late date and supplement its Reply with these additional evidentiary arguments.

Furthermore, BW-3's inexplicable delay threatens the Court's ability to rule on summary judgment in advance of the current trial date. The briefing on this motion will not be complete until October 25, 2017—only three business days before motions in limine are due for the upcoming trial. (Dkt. 29 at 3.) The Court should reject BW-3's blatant attempt to delay trial and deny the Objection as untimely. *See Cleveland Clinic*, 2012 WL 1945609, at *1; *see also Santander Consumer USA, Inc. v. Superior Pontiac Buick GMC, Inc.*, 2012 WL 5363553, at *11 (E.D. Mich. Oct. 30, 2012) (refusing to consider a motion to strike where "Defendant had objections to the first motion for partial summary judgment, yet did not raise those issues until two months later. The Court finds that the timing of these motions to strike after Defendant had notice and the opportunity to address the affidavits and exhibits is improper.").

## II. BW-3's Objection Should Be Overruled Because The Challenged Evidence Could Be Presented In Admissible Form At Trial

Even if the Court excuses the untimeliness of BW-3's Objection and considers its merits, the Objection should be overruled as to all four categories of challenged evidence. A party

opposing summary judgment may show that a fact is genuinely disputed by citing to "materials in the record." Fed. R. Civ. P. 56(c)(1). Such materials may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." *Id.* "The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial." *Alexander v. CareSource*, 576 F.3d 551, 558–59 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). As long as the content of the evidence could be presented in admissible form at trial, a party may rely on the evidence to defeat summary judgment. *See id.*; *see also* Fed. R. Civ. P. 56(c)(2); *Bailey*, 106 F.3d at 145 ("The proffered evidence need not be in admissible *form*, but its *content* must be admissible."); *Good v. FFCC Columbus, Inc.*, 2015 WL 11122105, at *4 (S.D. Ohio Aug. 17, 2015) ("The objection now contemplated by the amended Rule [56(c)(2)] is not that the material 'has not' been submitted in admissible from, but that it cannot be.").

### A. Letters From BWW's Counsel Are Admissible Because They Are Offered Not For Their Truth But To Show That BW-3 Was On Notice.

BW-3 objects to BWW's citation to several letters[1] written by BWW's former in-house counsel Sarah Yatchak and outside counsel Kerry Bundy. (Dkt. 106 at 2.) BW-3 does not identify which portions of the letters it objects to, nor does it cite any Federal Rule of Evidence or case law supporting its claim that the letters are inadmissible. Instead, BW-3 lumps together seven different letters and vaguely asserts they are "opinions and hearsay." (*Id.*)

---

[1] The letters BW-3 identifies in its Objection are: Yatchak's September 18, 2014 letter (Dkt. 75-4); Yatchak's November 21, 2014 letter (Dkt. 76-1); Bundy's April 30, 2015 letter (Dkt. 76-2); Bundy's July 27, 2015 letter (Dkt. 76-4); Yatchak's March 8, 2016 letter (Dkt. 76-5); Bundy's April 1, 2016 letter (Dkt. 77-2); and Bundy's May 17, 2016 letter (Dkt. 77-3).

4

BW-3's Objection is improper under Rule 56(c)(2) because it takes issue only with the form of the letters, not their content. Under Rule 56(c)(2) a party may object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *Id.* (emphasis added). Thus, a proper objection under Rule 56(c)(2) is "not that the material has not been submitted in admissible form, but that it cannot be." *See Watters v. Summit Cnty., Ohio*, 2016 WL 3544752, at *3 (N.D. Ohio June 29, 2016). Where, as here, at-issue evidence could be submitted at trial in an admissible form, a Rule 56(c)(2) objection must be overruled. *See id.* (noting the proponent of the evidence may defeat a Rule 56(c)(2) objection by proposing a method for presenting the fact through admissible evidence at trial).

BWW will be able to present numerous witnesses to testify about the content of the letters at trial. For example, BW-3 claims that the letters are used to support the fact that BW-3's restaurant "bore little resemblance to other BWW restaurants" and that BWW "provided a report summarizing a scope walk that BWW had conducted." (Dkt. 106 at 2-3.) But these facts could be admitted at trial through various witnesses, such as James Schmidt, Steve Merz, Sarah Yatchak, who all testified based on their personal knowledge that BW-3's restaurant "was so far beyond the appearance that it needed to be, compared with other restaurants in the system, that it was harmful to the brand" (Dkt. 79-1 at 33:5-9).[2] And BWW could call BW-3's own counsel—Craig Marshall—who testified at his deposition that he received the scope walk report summarizing the upgrades and remodel BWW was requiring BW-3 to complete. (Dkt. 68 at 163:17-164:14 (testifying he received the scope walk report submitted by BWW in opposition to BW-3's

---

[2] (*See also* Dkt. 88 at 71:3-8 ("[BW-3's] operation of the premises in the condition that it was in impaired our marks and was not in accordance with our system standards and therefore, to me, was a misuse of our marks."); Dkt. 87 at 65:5-10 ("I also believe that, with the condition of the store, the general condition of the store, that it would compromise a patron's view of what a Buffalo Wild Wings was. If they visited the Akron store and that was their only exposure to Buffalo Wild Wings, that would probably have been a misconception.").)

5

motion for summary judgment).) Because BW-3 has only identified facts in the letters that could be admitted at trial, its Objection must be overruled.

Even if the Court examines the admissibility of the letters themselves in the form submitted at summary judgment, BW-3's Objection is not well taken because the letters are not hearsay. A statement is only hearsay if it is offered "to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c)(2). BWW cites the at-issue letters in the argument section of its Opposition for the limited purpose of showing that BWW repeatedly informed BW-3 that it did not have the right to use BWW's marks if it persisted in operating its store without remodeling. (*See* Dkt. 95 at 11-12 (rebutting BW-3's assertion that BWW never advised BW-3 that it no longer had authority to use the marks because "[t]he record is replete with communications from BWW to BW-3 between 2013 and 2016 stating that BW-3's refusal to remodel" was a breach of the Agreement and materially impaired BWW's goodwill in its trademarks); *id.* at 17-18 (citing letters to show that BWW did not waive or delay asserting its rights but rather "explicitly informed BW-3 that its conduct was in violation of both the Agreement and the Lanham Act").) Thus, the letters are not offered by BWW to prove the truth of the matter asserted—that BW-3's store was non-complaint. Rather the letters are offered to show their effect on the listener—that BW-3 was on notice that BWW believed BW-3's continued use of the marks was outside the scope of the parties' license agreement. The letters therefore are not hearsay. *See United States v. Churn*, 800 F.3d 768, 776 (6th Cir. 2015) ("A statement that is not offered to prove the truth of the matter asserted but to show its effect on the listener is not hearsay."); *Biegas v. Quickway Carriers, Inc.*, 573 F.3d 365, 379 (6th Cir. 2009) (statement to "get out of the road" was not hearsay because it was offered "to show that [the driver] had been put on notice that he was in imminent danger and should have been aware of the

6

risk he faced").[3] Accordingly, the Court should overrule BW-3's Objection based on letters from BWW to BW-3.

        **B.**       **The Scope Walk Summary Has Proper Foundation.**

BW-3 next objects to a summary of a scope walk that Sarah Yatchak sent to BW-3 on March 8, 2016. BW-3 claims the "report is without foundation" because Steve Merz—the construction manager who physically conducted the scope walk of the BW-3 restaurant—testified at his deposition that he did not recognize the version of the scope walk report attached to the March 8, 2016 letter. (Dkt. 106 at 4.)

BW-3's foundation objection should be overruled. BW-3 does not claim that the summary of the scope walk is not, in fact, what it purports to be. BWW submitted the summary of the scope walk as evidence of the changes that BWW told BW-3 needed to be implemented to bring BW-3's restaurant into compliance with BWW's brand standards and prevent default under the License Agreement. BW-3 does not dispute that the summary of the scope walk is, exactly that. For example, BW-3 does not claim that BWW sent BW-3 a different document containing a different list of changes. Nor does BW-3 claim that this document inaccurately portrayed BWW's position with regard to the changes BWW was requiring of BW-3 in order to prevent default. BW-3's argument is essentially that there may have been an earlier version of the scope walk. This is not an evidentiary objection of any kind, foundational or otherwise.

Nor is it relevant that Mr. Merz, specifically, was unable to lay foundation for the document. Again, the relevant question for purposes of Rule 56(c)(2) is whether the evidence can be presented in any form that would be admissible in evidence. *See Smith v. Interim HealthCare*

---

[3] For the same reason, it is irrelevant that the letters may contain opinions. The truth of any opinions in the letters, or the qualification of their authors, does not matter for purposes of BWW's Opposition. What matters is that BWW informed BW-3 that BWW considered BW-3's continued use of the marks to be unauthorized.

*of Cincinnati, Inc.*, 2011 WL 6012971, at *4 (S.D. Ohio Dec. 2, 2011). If there is a witness who could provide proper foundation and authentication for a document at trial, it is irrelevant that some other witnesses might be unable to. *See Hillman v. Shelby Cnty.*, 2012 WL 681778, at *2 (W.D. Tenn. Feb. 29, 2012) (overruling objections where "Plaintiff does not state that these documents are inadmissible on their own and unable to be authenticated by any one person; rather she argues that they have not been authenticated by [one particular witness]"). Regardless of who prepared the summary, there is no question that Sarah Yatchak attached the summary to the letter she sent to BW-3 on March 8, 2016. Yatchak could testify to that fact, laying foundation for this particular scope walk report being the one that BWW sent to BW-3, which identified the changes BWW was requiring in order to avoid default. Additionally, BW-3's own attorney, Craig Marshall, could establish foundation for the document because he testified that he received the summary attached to the March 8, 2016 letter from BWW. (Dkt. 68 at 163:17-164:14.)[4] The summary of the scope walk could be admitted at trial and is proper for the Court to consider. BW-3's Objection should be overruled.

### C. The Expert Testimony Of James Schmidt Pursuant To Rule 26(a)(2)(C) Is Admissible And Should Be Treated Like An Expert Report.

BW-3's third objection concerns the disclosure of expert testimony by James Schmidt, BWW's former Chief Operating Officer, pursuant to Federal Rule of Civil Procedure

---

[4] That Sarah Yatchak or Craig Marshall could provide appropriate foundation—establishing that the summary of the scope walk in the record is indeed the summary BWW sent to BW-3—is confirmed by the purpose for which BWW cites the summary. BWW does not specifically cite the summary anywhere in the Argument section of its Opposition, and thus does not rely upon it to create a genuine issue of material fact. Instead BWW only cites the March 8, 2016 letter as one of six examples of "communications from BWW to BW-3 between 2013 and 2016 stating that BW-3's refusal to remodel (1) was a material breach of the Agreement, (2) placed BW-3 in default under the Agreement, and (3) was materially impairing the goodwill associated with BWW's System and trademarks." (Dkt. 95 at 16–17.) As with the letters discussed above, this letter and the attached summary are offered in BWW's Opposition to show that BW-3 was on notice.

26(a)(2)(C). (Dkt. 106 at 5.) Without citation to any Rule of Evidence or supporting authority BW-3 claims that the expert disclosure is inadmissible because it was not signed by Mr. Schmidt and "allegedly sets forth the facts and opinions that will be forthcoming . . . [b]ut the facts and opinions have never been provided." (*Id.*) Neither is a valid objection.

  As an initial matter, BWW does not rely on Schmidt's disclosure to show that genuinely disputed material facts preclude summary judgment on BWW's claims. BWW cites Schmidt's disclosure only to provide background about BWW's franchise system. (*See* Dkt. 95 at 7–8.) There is not a single reference to Schmidt's disclosure in the Argument section of BWW's Opposition. And BWW does not rely on it to dispute or establish any facts necessary for the Court to deny BW-3's Motion. Accordingly, BW-3's Objection to the use of Schmidt's disclosure has no bearing on the merits of BW-3's Motion for Summary Judgment and should be denied at moot. *See Oak Acres Nursery*, 2013 WL 391175 at *2; *see also Coy v. Cnty. of Delaware*, 993 F. Supp. 2d 770, 795 n.8 (S.D. Ohio 2014) (overruling objections as moot where consideration of the document did not impact the party's ability to demonstrate a genuine issue of material fact); *Sanders*, 2011 WL 589910 at *2 (denying objections noting "the Court would not need to reach a conclusion as to their admissibility as these exhibits are not necessary to decide Defendants' Motion for Summary Judgment").

  Nonetheless, Mr. Schmidt's proposed expert testimony identified in the disclosure is properly considered at summary judgment because the inquiry is whether the <u>evidence</u> is admissible at trial, not whether the particular form of the evidence submitted at summary judgment would be admissible at trial. *See Watters*, 2016 WL 3544752 at *3.  BW-3 focuses solely on the disclosure, but offers no reason why Mr. Schmidt would be unable to testify as to

9

the opinions stated in the disclosure.[5] Courts confronting similar objections have denied them because "the opinions set out in . . . expert reports may ultimately be presented at trial in an admissible form" by "call[ing] the experts to testify as to the opinions rendered in the report." *See Cent. Weber Sewer Improvement Dist. v. Ace Fire Underwriters Ins. Co.*, 2014 WL 495152, at *7 (D. Utah Feb. 6, 2014).[6] The fact that Mr. Schmidt did not sign the disclosure pleading is similarly irrelevant. *See Davis v. United States*, 2017 WL 4349033, at *3-4 (S.D. Ohio Sept. 29, 2017) (considering unsworn expert report submitted by non-moving party in opposition to summary judgment because "the content of Dr. Burkons' opinion letters is fully capable of being reduced to admissible form"); *Kearney Constr. Co. LLC v. Travelers Cas. & Sur. Co. of Am.*, 2017 WL 2172200, at *2-3 (M.D. Fla. Apr. 19, 2017) ("[The objecting party] makes no

---

[5] BW-3 makes a passing reference to Mr. Schmidt's qualifications as an expert, citing four pages of his deposition transcript for the proposition that "his qualifications to make many of the statements in the Disclosure were shown to be highly questionable." (Dkt. 106 at 6-7.) But BW-3 does not offer any argument in support of this baseless assertion. BW-3 does not identify what aspect of Mr. Schmidt's qualifications is "questionable," which portions of the disclosure Mr. Schmidt is allegedly unqualified to make, or any authority to support the proposition that "questionable" qualifications warrants a finding that an expert's testimony is inadmissible at summary judgment under Rule 56(c)(2). In any event, the issue of Mr. Schmidt's qualifications is not properly before the Court because BW-3 has not brought a Daubert motion to exclude his expert testimony.

[6] BW-3 has not identified any basis to treat Mr. Schmidt's expert disclosure under Federal Rule of Civil Procedure 26(a)(2)(C) differently than an expert report under Rule 26(a)(2)(B). For example, BW-3 cites no authority stating that Rule 26(a)(2)(C) disclosures should be treated differently for purposes of summary judgment than expert reports under Rule 26(a)(2)(B). A disclosure of expert testimony pursuant to Rule 26(a)(2)(C) takes the place of an expert report for a witness, such as Schmidt, who is not subject to Rule 26(a)(2)(B)—i.e., one who is not retained or specially employed to provide expert testimony in the case or whose duties as the party's employee regularly involve giving expert testimony. *See* Fed. R. Civ. P. 26(a)(2)(B)–(C) (distinguishing between witnesses who must provide written reports and those who do not provide a written report); *id.* at advisory committee's note to 2010 amendment ("This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).").

argument nor offers any reason why Mr. Nicholson's report cannot be presented in an admissible form. Rather, he argues that the report is unsworn. Such does not appear a valid basis to strike or disregard the report pursuant to revised Rule 56."); *see also Good*, 2015 WL 11122105 at *4 (noting that the 2010 amendment to Rule 56(c)(2) "works a sea change in summary judgment procedure and introduces flexibility . . . in place of bright-line rules, including Rule 56(e)'s unequivocal direction that documents presented in connection with a summary judgment motion must be authenticated.").

Having conceded that Mr. Schmidt's disclosure "sets forth the facts and opinions that will be forthcoming,"[7] BW-3's Objection amounts to little more than a complaint that those facts and opinions have not actually been presented at trial yet. This is not a basis to exclude Mr. Schmidt's proposed testimony from consideration at the summary judgment stage. *See, e.g.*, *Davis*, 2017 WL 4349033 at *3-4 (considering expert report submitted in opposition to summary judgment). Mr. Schmidt's Rule 26(a)(2)(C) disclosure satisfies the fundamental requirement of evidence relied on at summary judgment: its content would be admissible at trial. *See Bailey*, 106 F.3d at 145 ("The proffered evidence need not be in admissible form, but its content must be admissible."). BWW could call Mr. Schmidt at trial and, as represented in the Rule 26(a)(2)(C) disclosure, he would be able to testify to the facts and opinions referenced in that disclosure. The Court should overrule BW-3's Objection.

---

[7] BW-3 does not dispute that Mr. Schmidt's disclosure satisfies the requirements of Rule 26(a)(2)(C). The disclosure must state "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). Mr. Schmidt's disclosure does exactly that. (*See, e.g.*, Dkt. 71-3 at 4 ("If a licensee does not offer the same quality of experience or products in one location, that results not only in a negative association for that particular BWW location, but it results in a devaluation of the BWW brand because it tarnishes the image and undermines the uniformity across the BWW brand.").)

### D.     The Customer Comments Are Not Hearsay As Used To Show Consumer Confusion And Can Be Authenticated.

BW-3's fourth objection is to customer comments regarding the Akron Restaurant that were submitted through BWW's website (Dkt. 95-14, 95-15) or posted as reviews on Google (Dkt. 95-13). (Dkt. 106 at 7.) BW-3 claims the comments are "unauthenticated" and constitute "hearsay." (*Id.*)[8] Here again, BW-3's Objection has no bearing on BWW's opposition to BW-3's Motion for Summary Judgment. BWW cites each of these exhibits only once, in the background section of its Opposition. (*See* Dkt. 95 at 9–10.) BWW does not rely on them in its argument to show any genuinely disputed material fact. Accordingly, the Court need not consider this Objection on the merits and should deny it as moot. *See Oak Acres Nursery*, 2013 WL 391175 at *2; *Coy*, 993 F. Supp. 2d at 795 n.8; *Sanders*, 2011 WL 589910 at *2.

However, even if the Court considers the Objection, the customer comments are not hearsay because they are not offered for their truth. Instead, the customer comments are offered to show consumer confusion—that consumers believed BW-3's restaurant was in compliance with BWW's brand standards. (*See, e.g.*, Dkt. 95-15 ("Looking to the other locations that my wife and I attend on a regular basis the Akron store does not hold a candle to their quality in any respect.").) Courts regularly rely on customer comments for this non-hearsay purpose. *See, e.g.*, *Choice Hotels Int'l, Inc. v. Patel*, 940 F. Supp. 2d 532, 538 (S.D. Tex. 2013) ("The Court overrules the objection to the extent the evidence shows consumer confusion . . . . The mere fact that complaints were submitted to Choice Hotels concerning the Victoria property supports the confusion point without a need to establish the truth of the complaint—that the customers had a

---

[8] BW-3 also claims that one of the customer comments was "curiously never provided in discovery." (Dkt. 106 at 8.) BW-3 does not explain why that would preclude the Court from considering the evidence at the summary judgment stage. Nor does BW-3 explain why a publicly-available Internet comment searched for by BWW's attorney was required to be produced in response to BW-3's discovery requests.

bad experience."); *Trouble v. Wet Seal, Inc.*, 179 F. Supp. 2d 291, 298 (S.D.N.Y. 2001) ("[O]ut-of-court statements offered to establish customer confusion is not hearsay."); *see also Damon's Restaurants, Inc. v. Eileen K Inc.*, 461 F. Supp. 2d 607, 621 (S.D. Ohio 2006) (customer complaints were not hearsay because they were not "offered to prove the truth of the matter asserted, i.e., the restaurants were out of many items," but instead "to show merely that plaintiff received complaints from customers about the defendants' operations.").

The customer comments also need not be authenticated in order for the Court to consider them at summary judgment. *See Good*, 2015 WL 11122105 at *4. But they could be authenticated at trial. The comments submitted through BWW's website can be authenticated by Ivar Manning, the member of BWW's franchise field team who received the comments regarding BW-3's restaurant. (*See* Dkt. 95-14, 95-15.) The comments posted on Google can be authenticated by declarations from BWW's counsel, who took the screenshots, which themselves contain indicia of authenticity such as the web address and formatting. *See Foreword Magazine, Inc. v. OverDrive, Inc.*, 2011 WL 5169384, at *3 (W.D. Mich. Oct. 31, 2011) (allowing affidavits from witnesses who viewed websites to authenticate screenshots); *SMS Audio, LLC v. Belson*, 2017 WL 1533971, at *4 (S.D. Fla. Mar. 20, 2017) ("Multiple courts have permitted authentication of a web posting's source and accuracy by testimony of the witness who printed it, combined with circumstantial indicia of authenticity, such as the posting's web address." (collecting cases)); *It's My Party, Inc. v. Live Nation, Inc.*, 2012 WL 3655470, at *9 (D. Md. Aug. 23, 2012) (holding that Yelp review and Washington Post online comments were properly authenticated based on testimony and the "distinctive formatting" of the respective websites). Because the customer comments are not hearsay as used to show consumer confusion and can be properly authenticated, BW-3's Objection should be overruled as to this evidence.

## **CONCLUSION**

For all of the foregoing reasons, BWW respectfully requests that BW-3's Objection be overruled in their entirety.

Dated: October 18, 2017

Respectfully submitted,

*s/ Kerry L. Bundy*
Stephan C. Kremer
**REMINGER CO., L.P.A.**
400 Courtyard Square
80 South Summit Street
Akron, Ohio  44308
Phone: (330) 375-1311
Fax: (330) 375-9075
skremer@reminger.com

Kerry L. Bundy, Esq. (admitted *pro hac vice*)
William L. Killion, Esq. (admitted *pro hac vice*)
Cicely R. Miltich, Esq. (admitted *pro hac vice*)
FAEGRE BAKER DANIELS LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402-3901
Phone: (612) 766-7000
Fax: (612) 766-1600
*kerry.bundy@faegreBD.com*
*william.killion@faegreBD.com*
*cicely.miltich@faegreBD.com*

**Attorneys for Plaintiff**
**Buffalo Wild Wings, Inc**.

## **CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2017, a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

       *s/ Kerry L. Bundy*
       Kerry L. Bundy